**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| IN RE:  PAYROLL MANAGEMENT, INC., | Bankruptcy Case No. 18-30298-KKS |
| Debtor-in-Possession. | CHAPTER:  11 |

**AMENDED PLAN OF REORGANIZATION**

Dated: January 17, 2023

NATASHA Z. REVELL
ZALKIN REVELL, PLLC
2078 US Highway 98W, Suite 105A, #110
Santa Rosa Beach, FL 32459
(850) 267-2111 (Tel)
nrevell@zalkinrevell.com
Counsel for the Debtor-in-Possession

KENNETH W. REVELL
ZALKIN REVELL, PLLC
2800 Old Dawson Rd., Ste. 2, #202
Albany, GA 31707
(229) 435-1611 (Tel)
(866) 560-7111 (Fax)
krevell@zalkinrevell.com
Counsel for the Debtor-in-Possession

## INTRODUCTION

This Plan of Reorganization (the "Plan") is proposed by the Debtor, Payroll Management, Inc. the "Debtor" or "PMI"), pursuant to § 1121(a) of Title 11 of the United States Code (the "Bankruptcy Code"). On March 27, 2018 (the "Petition Date") the Debtor commenced its bankruptcy case by filing a voluntary Chapter 11 petition.

Under the Plan, the Debtor seeks to make payments under the Plan from the liquidation of its remaining assets. The Debtor estimates that the Effective Date of the Plan will be on or after April 14, 2023, but may be earlier or later based upon timing of the confirmation hearing.

This Plan provides for five (5) classes of secured claims; and one (1) class of unsecured claims. Unsecured creditors holding allowed claims will receive distributions as more fully described herein. This Plan also provides for the payment of priority administrative claims either on the Effective Date of the Plan or pursuant to the claimant's agreement and payment of other priority claims as prescribed by the Bankruptcy Code.

All Creditors and other parties in interest are encouraged to carefully review the detailed provisions set forth herein carefully for information regarding the precise treatment of their claims or interests.

YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE).

## ARTICLE I - DEFINITIONS AND CONSTRUCTION OF TERMS

### A.    Scope of Definitions.

#### 1.    Defined Terms.

All terms employed herein shall have the meanings set forth in the Bankruptcy Code unless specifically defined to the contrary herein. For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan. For purposes of the Plan and such defined terms, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses thereof will be interchangeable (unless the context otherwise requires), and the defined terms will include masculine, feminine, and neutral genders. The words "herein", "hereof", "hereto", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Moreover, some terms not defined herein are defined in the section in which they are used. The defined terms stated in this Article I are substantive terms of the Plan, and Article I will be deemed incorporated throughout the rest of the Plan to apply the substantive provisions included in the defined terms.

(1)    **Actions.** All actions that a trustee or debtor-in-possession is empowered to bring pursuant to 11 U.S.C. §§ 542-553, and any other cause of action, lawsuit, adversary proceeding, contested matter, claim objection, or right of the Debtor or the Estate against any Person.

(2)    **Administrative Claim.** A Claim for payment of an administrative expense under § 503 of the Bankruptcy Code that is entitled to priority under §

2

507(a)(2) of the Bankruptcy Code and any fees or charges assessed against the Estate pursuant to 28 U.S.C. 1930.

(3)      **Allowed Amount.**  With respect to a Claim, (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in the Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Bankruptcy Court pursuant to Rule 3003(c)(3) of the Bankruptcy Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Bankruptcy Court pursuant to Rule 3003(c)(3) of the Bankruptcy Rules: (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or Bankruptcy Rules, or as otherwise fixed by the Bankruptcy Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (c) with respect to a Fee Request, such amount as shall be fixed by an order of the Court which has become a Final Order. In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such Claim after the Filing Date.

(4)      **Allowed Claim.**  Any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined. Any such claim shall be an Allowed Claim as to the undisputed portion or amount. The Allowed Amount of each Secured Claim shall not include, pursuant to § 506(b) of the Bankruptcy Code, interest on such Claim, nor shall it include any fees, costs, or charges provided for under the agreement(s) under which such Claim arose incurred as a result of any breach or default, act or omission occurring through the Effective Date or by reason of the Plan, Confirmation or Substantial Consummation.

(5)      **Article**.  One of the numbered Articles of the Plan.

(6)      **Assets.**  All of the right, title and interest of the Debtor in and to property of any type or nature.

(7)      **Avoidance Actions.**  Each and every claim, demand or cause of action for avoidance and recovery of assets, whatsoever, which the Debtor has or had the power to assert immediately prior to the Confirmation of the Plan, including, without limitation, actions for the avoidance and recovery, pursuant to §550 of the Bankruptcy Code, of transfers avoidable by reason of §§544, 545, 547, 548, 549, or 553(b) of the Bankruptcy Code and/or to recover fraudulent transfers pursuant to state law.

(8)      **Bankruptcy Court.**  The United States Bankruptcy Court for the Northern District of Florida having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. §157, the unit of such District Court constituted pursuant to 28 U.S.C. §151.

(9)    **Bankruptcy Rules.**  The rules of practice and procedure in bankruptcy, promulgated under 28 U.S.C. §2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

(10)    **BP Claim.**    That certain claim of the Debtor against the Deepwater Horizon Claims Center, as described in that certain Settlement Agreement with the Deepwater Horizon Claims Center as filed in the Bankruptcy Case at Doc. 95 and approved by the Court at Doc. 107.

(11)    **BP Contingency Counsel.**  The Greer Law Firm and Harrison Sale McCloy Chartered, et al. ("Harrison Sale") who participated as contingency fee counsel for the Debtor in seeking recovery of the Debtor's BP Claim.

(12)    **Business Day.**  Any day except Saturday, Sunday, and any other day on which commercial banks in Florida are authorized by law to close.

(13)    **Cash.**  Legal tender of the United States of America or wire transfer from a domestic bank.

(14)    **Chapter 11 Case.**  The case under Chapter 11 of the Bankruptcy Code commenced by the Debtor, styled *In re Payroll Management, Inc.,* Chapter 11 Case No. 18-30298-KKS*,* currently pending before the Bankruptcy Court.

(15)    **Claim.**    A right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims and Unsecured Claims.

(16)    **Class.**  A group of Claims or Interests classified together pursuant to Article III of the Plan.

(17)    **Collateral.**  Any property or interest in property of the Debtor's estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

(18)    **Confirmation.**  The entry by the Bankruptcy Court of the Confirmation Order.

(19)    **Confirmation Date.**    The date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

(20)    **Confirmation Hearing.**  A hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

(21)    **Confirmation Order.**    The order entered by the Bankruptcy Court confirming the Plan, which shall contain such provisions as the Plan Proponent desires and shall otherwise be in form and substance satisfactory to the Plan Proponent.

(22)    **Creditor.**    Any Person holding a Claim or Interest, including Administrative Claimants and Claims of the kind specified in §§ 502(b), 502(h) and 502(i) of the Bankruptcy Code, and such Person's heirs, successors, assigns, executors and personal representatives

(23)    **Creditors Fund.**    The fund described in Article VII into which the Debtor shall contribute funds for payment to creditor classes under the Plan.

(24)    **Debt** has and shall have the same meaning ascribed to it in Bankruptcy Code §101(12).

(25)    **Disputed Claim.**    Any Claim for which an Allowed Amount has not yet been determined and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date as may be fixed by the Court.

(26)    **Effective Date.**    The fifteenth day after the entry of the Confirmation Order.    But if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the Confirmation Order in effect, provided that the Confirmation Order has not been vacated.

(27)    **Equity Interest Holder.**    The Holder of an Equity Interest in the Debtor.

(28)    **Estate.**    The bankruptcy estate of the Debtor created under Bankruptcy Code §541.

(29)    **Executory Contract.**    Every unexpired lease and executory contract that is subject to being assumed or rejected by the Debtor under §365 of the Bankruptcy Code, pursuant to the Plan or separate motion.

(30)    **Final Order.**    An order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

(31)    **FSIGA.**    The Florida Self-Insurers Guaranty Association, Incorporated.

**FSIGA Litigation.**    That certain adversary action by the Debtor against FSIGA bearing Adversary Case No. 22-03007 seeking to recover certain insurance deposit related funds.

(32)    **Gross BP Proceeds.**    The gross proceeds of the BP Claim in the amount of $1,070,330.23 following the Court's Order at Doc. 107 granting the Motion to Approve Settlement with the Deepwater Horizon Claims Center (Doc. 96).    See also "Net BP Proceeds" defined below.

(33)    **Holder.**    The beneficial owner of any Claim or Equity Interest.

(34)    **Impaired.**    When this term is used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest," shall mean that the Plan alters the legal, equitable, or contractual rights of the members of that class.

(35)    **Lien.**    A charge against or interest in any item of Property of the Estate to secure payment of a debt or performance of an obligation.

(36)  **Net BP Proceeds.**  The net proceeds of the BP Claim in the amount of $820,330.23 following Court's approval of the Joint Motion to Approve Settlement Agreement Between and Among the Debtor, Sunz Insurance Company, Sunz Insurance Solutions, Harrison Sale McCloy Chartered, et al., and the Greer Law Firm (the "Sunz/Contingency Counsel Agreement") filed at Doc. 214 and approved by the Court at at Doc. 223.  The resolution of the contingency counsel lien pursuant to the Sunz/Contingency Counsel Agreement included a determination that the BP Contingency Counsel had a valid first priority lien of $250,000.00 as to the BP Proceeds, and settled certain disputes between the Debtor and Contingency Counsel for an agreement that, of the $250,000.00 subject to the Contingency Counsel lien, $75,000.00 would be paid to the Greer Law Firm, $75,000.00 would be paid to Harrison Sale, and $100,000.00 would be set aside as a "carve out" to the Debtor's estate. Following the approval of the Sunz/Contingency Counsel Agreement and payment of the sums set forth, therein, the net remaining proceeds of the BP Claim defined, herein, as the "Net BP Proceeds" amounted to $820,330.23, which sum was placed in a separate DIP bank account pending resolution of the Sunz/IRS Litigation, which is presently on appeal.

(37)  **Person.**  Any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, entity or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

(38)  **Plan Proponent.**  The Debtor.

(39)  **PMI.**  Payroll Management, Inc., the Debtor, herein.

(40)  **Priority Tax Claim.**  Any Claim entitled to priority in payment under §§507(a)(8) or 502(i) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

(41)  **Professional Persons.**  All attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under §§327, 328, 330, or 503(b) of the Bankruptcy Code.

(42)  **Property of the Estate.**  The property defined in §541 of the Bankruptcy Code and any other property right or interest of the Debtor.

(43)  **Rights of Action or Reserved Rights of Action.**  All those certain potential causes of action, if any, which the Debtor may bring against third parties as of Confirmation, other than (i) the Avoidance Actions, and the proceeds thereof and (ii) the prosecution of objections to Disputed Claims.

(44)  **Schedules.**  The schedules of assets and liabilities, the list of holders of Equity Interests and the statement of financial affairs filed by the Debtor under §521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto.

(45)  **Secured Claim.**  Any Claim, to the extent reflected in the schedules or a proof of Claim as a Secured Claim, which is secured by a valid Lien on Collateral

to the extent of the value of such Collateral, as determined in accordance with §506(a) of the Bankruptcy Code.

(46) **Sunz/IRS Litigation.**   That certain litigation between Sunz Insurance Company and the IRS regarding lien priority as to the Net BP Proceeds.   The litigation was initiated in the Bankruptcy Case as Adversary Case No. 19-03005, was appealed to the United States District Court for the Northern District of Florida as Case No. 3:21-cv-00600-MCR-HTC, and is presently pending on appeal to the United States Court of Appeals for the Eleventh Circuit as Case No. 22-12336.

(47) **Unclaimed Property.**   Any security, money or other property distributed under the Plan by mail to the latest mailing address filed of record with the Bankruptcy Court for the party entitled thereto, which remains unclaimed at the expiration of ninety (90) days after the date of mailing.   Such Unclaimed Property shall become property of the Debtor pursuant to § 347 of the Bankruptcy Code.

(48) **Unsecured Claim.**   Any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtor, and which is not (a) a secured claim pursuant to §506 of the Bankruptcy Code, as modified by §1111(b), or (b) of the Bankruptcy Code a Claim entitled to priority under §§503 or 507 of the Bankruptcy Code.   "Unsecured Claim" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

(49) **Vensure.**   Vensure Employer Services, Inc., the company who purchased a substantial portion of the assets of the Debtor in or around October of 2017.

## ARTICLE II - CLASSIFICATION OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

Pursuant to §1123(a) of the Bankruptcy Code, certain types of claims are not placed into voting classes.  They are not considered Impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment provided in the Bankruptcy Code.   As such, Administrative Claims and Priority Tax Claims are treated separately pursuant to the terms set forth in this Article.

### A.    Administrative Expenses and Fees.

All Persons seeking an award by the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred through and including the Effective Date under §330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to §503(b)(2) of the Bankruptcy Code shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than thirty (30) days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court.  If such award is granted by the Bankruptcy Court, the same shall be (i) paid in full in Cash in such amounts as are Allowed by the Bankruptcy Court on the fifth (5th) Business Day after the date upon which such Administrative Expense Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable and in accordance with the priorities established by the Bankruptcy Code, (ii) upon such other terms as may be mutually agreed upon between such holder of an Administrative Claim and the

Reorganized Debtor or (iii) in accordance with the terms of any order entered by the Bankruptcy Court.

**B.     Priority Tax Claims**

The unsecured Allowed Claims of governmental units for unpaid taxes, interest and assessments, if any, entitled to priority under § 507(a)(8) of the Bankruptcy Code shall be paid pro rata in the priority provided for in the Bankruptcy Code to the extent funds are available following the complete liquidation of the Debtor or as otherwise agreed to by holders of such priority tax claims.

### ARTICLE III -  CLASSIFICATION AND TREATMENT OF CLAIMS

**A.     General Overview**

As required by the Bankruptcy Code, this Plan classifies Claims and Equity Interests in various Classes according to its right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each Class of Claims or Equity Interests is Impaired or Unimpaired. The Plan provides the treatment each Class will receive under the Plan. Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan as set forth in this Article.   As of the Confirmation Hearing, any Class of Claims which does not contain any Creditor's Claim will be deemed deleted automatically from the Plan; and any Class which does not contain an Allowed Claim (or a Claim temporarily or provisionally allowed by the Bankruptcy Court pursuant to Bankruptcy Rule 3018(a)) will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan.

**B.     Designation of Classes under the Plan**

Each Holder of a Claim, as defined in §101(4) of the Bankruptcy Code, of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all Claims arising from the rejection of executory contracts and unexpired leases, will be bound by the provisions of the Plan. The Plan contains ten (10) classifications or sub-classifications of Claims, as follows:

| Class | Description |
|:---:|:---|
| 1 | Secured Claim of United States of America, Department of Treasury, Internal Revenue Service |
| 2 | Secured Claim of Sunz Insurance Company |
| 3 | Secured Claim of Joseph Barton Greer |
| 4 | Secured Claim of Harrison Sale McCloy Chartered, et al |
| 5 | Secured Claim of Okaloosa County Tax Collector |
| 6 | General Unsecured Claims |

**C.    Treatment of Classes.**

**1.    Class 1:  Secured Claim of IRS**

(1)    <u>Description</u>.  Class 1 consists of the Secured Claim of United States of America, Department of the Treasury, Internal Revenue Service ("IRS") in the amount of $29,151,266.57 as set forth in Amended Claim #11 filed on August 15, 2018 by the IRS.

(2)    <u>Collateral</u>.  The collateral for this claim (the "Collateral") is, and shall be solely limited to, the following property:  (1) the Net BP Proceeds, in the liquidated amount of $820,330.23, subject to the final adjudication of the Sunz/IRS Litigation; and (2) any additionally discovered assets, including all property and rights to property, to which the United States' filed federal tax liens against Debtor attach per 26 U.S.C. §§ 6321, 6323.

(3)    <u>Treatment</u>.  Except to the extent that the Secured Claim of IRS has been paid by the Debtor prior to the Effective Date or IRS agrees to different treatment, the Secured Claim of IRS shall be paid to the IRS to the extent of the recovered value of the Collateral described above, upon the final liquidation of the above described collateral and entry of a final non-appealable order with respect to any and all disputed claims to the same.  Following the entry of a final non-appealable order in favor of the IRS with respect to any of the items of Collateral, the Debtor shall file a notice reflecting such order (if the Bankruptcy Case is open at such time) and shall thereafter disburse funds accordingly.

(4)    <u>Retention of Liens</u>.  Except to the extent that IRS agrees to a different treatment, IRS shall retain its lien on the Collateral as set forth above, which Collateral shall be the sole collateral for IRS's Allowed Secured Claim.

(5)    <u>Separate Liquidation and Payment Authorized</u>.    The Debtor is authorized to liquidate the above described Collateral separately with the net proceeds of each item of collateral (following payment to superior lien holders and costs of liquidation, if any) paid to IRS (up to the amount necessary to pay the then existing balance on the Class 1 Claim of IRS).

(6)    <u>Impairment and Voting</u>.  Class 1 is Impaired by the Plan.  IRS is entitled to vote on the Debtor's Plan.

**2.    Class 2: Secured Claim of Sunz Insurance Company.**

(1)    <u>Description</u>.  Class 2 consists of the Secured Claim of Sunz Insurance Company ("Sunz").   Sunz shall have an allowed secured claim in the amount of $6,167,667.00 pursuant to the terms of the Sunz/Contingency Counsel Settlement Agreement filed with the Court at Doc. 214-1 and approved by the Court at Doc. 223, which settlement agreement amends Proof of Claim #39 filed by Greer and resolves the Debtor's objections to Claim #39.

(2)    <u>Collateral</u>.  The collateral for this claim (the "Sunz Collateral") is, and shall be solely limited to, the following property:   (1) the Net BP Proceeds, in the liquidated amount of $820,330.23, subject to the final adjudication of the Sunz/IRS Litigation; and

(2) any additionally discovered assets to which Sunz obtains an order of the Bankruptcy Court that it holds a valid priority lien to such asset(s).

(3)     Treatment.  Except to the extent that the Secured Claim of Sunz has been paid by the Debtor prior to the Effective Date or Sunz agrees to different treatment, the Secured Claim of Sunz shall be paid to Sunz to the extent of the recovered value of the Collateral described above, upon the final liquidation of the above described collateral and entry of a final non-appealable order with respect to any and all disputed claims to the same. Following the entry of a final non-appealable order in favor of the Sunz with respect to any of the items of Collateral, the Debtor shall file a notice reflecting such order (if the Bankruptcy Case is open at such time) and shall thereafter disburse funds accordingly.

(4)     Impairment and Voting.  Class 2 is Impaired by the Plan.  Sunz is entitled to vote on the Debtor's Plan.

### 3.     Class 3: Secured Claim of Joseph Barton Greer

(1)     Description.   Class 3 consists of the Secured Claim of Joseph Barton Greer ("Greer").   Greer shall have an allowed secured claim in the amount of   $75,000.00 pursuant to the terms of the Sunz/Contingency Counsel Settlement Agreement filed with the Court at Doc. 214-1 and approved by the Court at Doc. 223, which settlement agreement amends Proof of Claim #40 filed by Greer and resolves the Debtor's objections to Claim #40.

(2)     Collateral.  The collateral for this claim is, and shall be solely limited to, the gross proceeds of the Debtor's BP Claim.

(3)     Treatment.  Pursuant to the Sunz/Contingency Counsel Settlement Agreement, the Class 3 Claim of Greer has been paid in full by the Debtor from the proceeds of the Debtor's BP Claim and nothing further is owed to Greer by the Debtor.

(4)     Impairment and Voting.  Class 3 is Unimpaired by the Plan.  Greer is deemed to have accepted the Plan.

### 4.     Class 4: Secured Claim of Harrison Sale McCloy Chartered, et al

(1)     Description.   Class 4 consists of the Secured Claim of Harrison Sale McCloy Chartered, et al ("Harrison Sale").  Harrison Sale shall have an allowed secured claim in the amount of   $75,000.00 pursuant to the terms of the Sunz/Contingency Counsel Settlement Agreement filed with the Court at Doc. 214-1 and approved by the Court at Doc. 223, which settlement agreement amends Proof of Claim #42 filed by Harrison Sale and resolves the Debtor's objections to Claim #42.

(2)     Collateral.  The collateral for this claim is, and shall be solely limited to, the gross proceeds of the Debtor's BP Claim.

(3)     Treatment.  Pursuant to the Sunz/Contingency Counsel Settlement Agreement, the Class 3 Claim of Harrison Sale has been paid in full by the Debtor from the proceeds of the Debtor's BP Claim and nothing further is owed to Harrison Sale by the Debtor.

(4)     Impairment and Voting.  Class 4 is Unimpaired by the Plan.  Harrison Sale is deemed to have accepted the Plan.

### 5.    Class 5: Secured Claim of Okaloosa County Tax Collector

(1)    <u>Description.</u>  Class 5 consists of the disputed Secured Claim of Okaloosa County Tax Collector ("OCTC") filed in connection with Proof of Claim #5 in the amount of $5,527.85.  This asserts real property tax liens as to the Debtor's previously sold real property as well as statutory liens to tangible property taxes.  The real property taxes were paid at the time of the sale of the Debtor's real property, leaving a remaining tangible property tax debt of $455.30.  OCTC may claim that additional interest and/or penalties have accrued.  With respect to the statutory tax liens associated with tangible property taxes, the IRS may have a superior lien and, hence OCTC's lien may be wholly unsecured.  The Debtor intends to object to the amount and/or secured value of the Class 5 Claim.

(2)    <u>Collateral</u>.  OCTC claims remaining personal property of the Debtor situated in the Debtor's storage unit at Simply Self Storage in Navarre, Florida (the "Navarre Personal Property")  as collateral for its claim, however, it is unresolved as to whether IRS has a superior lien on such property.

(3)    <u>Treatment</u>.  The portion of Claim #5 attributable to real property taxes was paid in full upon the sale of the Debtor's real property and nothing further is owed with respect to this portion of OCTC's claim.  With respect to the remaining portion of Claim #5 in the amount of $455.30, the Debtor will pay this claim (provided IRS is not found to have a superior lien) from the proceeds of the liquidation of the Navarre Personal Property to the extent such liquidation yields available funds.

(4)    <u>Impairment and Voting</u>.  OCTC shall be entitled to vote its secured claim only if such is not disputed by the Debtor as of the date of Plan voting.

### 6.    Class 6: General Unsecured Claims

(1)    <u>Description</u>.  Class 6 consists of Claims of General Unsecured Creditors.

(2)    <u>Treatment of General Unsecured Claims</u>.  The General Unsecured Creditors Class shall receive payments as set forth in Article IV.B with funding provided as described in Article VII below.  No Class 6 unsecured Claim shall be allowed to the extent that it is for interest or other similar charges other than as otherwise specifically and expressly provided for herein.

(3)    <u>Impairment and Voting</u>.  Class 6 is Impaired by the Plan.  Holders of Allowed Class 6 Claims are entitled to vote on the Debtor' Plan.

### 7.    Agreement to Less Favorable Treatment/Pre-payment

Any Creditor may agree to less favorable treatment than is provided for in the Plan. The obligations of the Debtor under this Plan may be prepaid in full or in part without penalty.  To the extent a Creditor's Secured Claim has been paid by the Debtor prior to the Effective Date, this will constitute pre-payment of the Claim.

### 8.    Satisfaction of Claims

The treatment of and the consideration received by the holders of the Claims and Interests pursuant to this Article of the Plan shall be in full satisfaction of their respective Claims against, or Interests in, the Debtor and the Estate.

## ARTICLE IV -  PAYMENTS TO CREDITORS UNDER THE PLAN

### A.    Source of Plan Funding.

Payments to creditors shall be made from cash on hand and from liquidation of the Debtor's remaining assets.

### B.    Payments to Creditors Under Plan

Unless otherwise provided in this Plan or indicated in Article III, herein, funds paid into the Creditors Fund by the Debtor, shall be used to pay the following claims in the priority indicated:

1.  All claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code as set forth in Article II.

2.  The payment of claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid under the Plan as set forth in Article II.

3.  After payment of the foregoing claims, remaining sums paid into the Creditors Fund by the Debtor, shall be paid, on a pro-rata basis, to allowed general unsecured claims.

### C.    Distributions under the Plan

#### 1.    Plan Administration

Distributions under the Plan shall be made by the Debtor in accordance with the priorities established by the Plan.

#### 2.    Manner of Distributions

At the option of the Debtor, distributions may be made in Cash, by wire or ACH transfer or by a check drawn on a domestic bank.

#### 3.    Interest on Claims

Unless otherwise specifically provided for in this Plan, the Confirmation Order, (or any documents in connection therewith) or required by applicable bankruptcy law, Post-Petition Date interest shall not accrue or be paid on Claims (other than Allowed Secured Claims), and no Holder of a Claim (other than Allowed Secured Claims) will be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date any Final Distribution is made thereon.

#### 4.    No De Minimus Distributions

Other than in the Final Distribution, no payment of Cash in an amount of less than $20.00 shall be made on account of any Allowed Claim.  Such undistributed amount will instead be held

in escrow and made as part of the Final Distribution, which will be paid to each creditor with an Allowed Claim, regardless of the amount of each dividend.

### 5.    Unclaimed Property

All distributions made by mail will be made to latest mailing address filed of record with the Bankruptcy Court for the party entitled thereto.   Any security, money or other property remaining unclaimed at the expiration of ninety (90) days after such mailing shall become property of the Debtor pursuant to § 347 of the Bankruptcy Code.

### 6.    Failure to Negotiate Checks

Checks issued in respect of distributions under this Plan shall be null and void if not negotiated within 90 days after the date of mailing. Any funds that are the subject of non-negotiated checks, shall be held by the Debtor until such time as they qualify for Unclaimed Property as described in the preceding paragraph.   Requests for reissuance of any such check shall be made, in writing, and by email directed to the Debtor and to Debtor's counsel by the Holder of the Allowed Claim.   If any distribution check is not negotiated by a claim holder within 90 days of the date of issuance, then the Claim to which the distribution applies shall be forever barred, as against the Debtor, the Estate, and its Assets.

### 7.    Undeliverable and Unclaimed Distributions

The Debtor will make distributions to Holders of Allowed Claims and Interests at the addresses set forth for receipt of payments on the Proofs of Claim, if any, filed by such Holders or, if no proof of claim is filed, to the last known addresses of such Holders.   It is the responsibility of the Holder of Allowed Claims to keep its address current and of record with the Bankruptcy Court or, of the case is closed, with the Debtor in accord with the notice procedures described, herein.   If any Holder's distribution is returned as undeliverable such Holder shall have four months, following the date of any attempted distribution, in which to advise the Debtor that it has not received its, his or her distribution and, thereafter such Holder's Claim shall be discharged and such Holder shall be forever barred from asserting any such Claim against the Debtor or its property.   Any distributions which are undeliverable and unclaimed or have not been cashed within the time periods set forth above, shall become available for distribution to the Holders of Allowed Claims in accordance with the Plan and the Holder of an unclaimed or undeliverable distribution shall not be entitled to any further distribution under the Plan.

### 8.    No Payment or Distribution Pending Allowance.

All references to Claims and amounts of Claims refer to the amount of the Claim allowed by operation of law, Final Order of the Bankruptcy Court or this Plan. Accordingly, notwithstanding any other provision in this Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim, unless and until the Disputed Claim becomes an Allowed Claim. No partial distributions will be made while an Objection is pending to part or all of a Claim.

### 9.    Disputed Distribution.

If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Debtor may, in lieu of making such distribution to such Holder, make such distribution (or any amount estimated pursuant to § 502(c) of the Bankruptcy Code) into a segregated account until the disposition thereof shall be determined by Final Order of the

Bankruptcy Court (or other court of competent jurisdiction) or by written agreement among the interested parties to such dispute.

### 10.    Estimation of Disputed Claims.

To effectuate distributions pursuant to this Plan and avoid undue delay in the administration of the Estate, the Debtor shall have the right, at any time, to seek an order of the Bankruptcy Court, after notice and a hearing (which notice may be limited to the Holder of such Disputed Claim and which hearing may be held on an expedited basis), estimating a Disputed Claim pursuant to § 502(c) of the Bankruptcy Code, irrespective of whether the Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such Objection.  In the event the Bankruptcy Court estimates any contingent or Disputed Claim, the estimated amount may constitute a maximum limitation on such Claim, as determined by the Bankruptcy Court.  All of these Objection and resolution procedures are cumulative and not necessarily exclusive of one another. In addition to seeking estimation of Claims, the Debtor may resolve or adjudicate any Disputed Claim in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Chapter 11 Case had not been commenced, subject only to the terms of this Plan. Claims may be subsequently compromised, settled, withdrawn or resolved by the Debtor, pursuant to this Plan. Resolution of Disputed Claims.

The Debtor have filed or may file, within ninety (90) days of the Effective Date, objections to certain claims which may be resolved prior to confirmation of the Debtor' Plan. Such an objection shall preclude the consideration of any claims as "allowed" for the purposes of timely distribution in accordance with the Plan.

### 11.    Distributions in Complete Satisfaction.

The distributions and rights provided under this Plan will be in complete satisfaction and release, effective as of the Effective Date, of all Claims against and Interests in the Debtor's Estate and all liens upon any Property of the Estate. The Holders of liens satisfied and released under this Plan will execute and deliver, or cause to be executed and delivered, any and all documentation reasonably requested by the Debtor evidencing the satisfaction, discharge and release of such liens.

### 12.    Existing Securities and Agreements

Upon the Effective Date, except as otherwise provided in the Plan, the Debtor shall determine whether it is necessary for any Holder of any debenture, promissory note, pledge agreement, guarantee, mortgage, financing statement, or other instrument evidencing a Claim or a Lien related thereto to surrender such document and/or to execute such other documents to evidence the satisfaction and discharge of the Claim or Lien as provided for in the Plan.  The Debtor shall provide prompt notice of the determination that surrender is necessary with respect to a Claim or Lien, and no Distribution on account thereof shall be made unless the surrender occurs, unless otherwise ordered by the Bankruptcy Court.

### ARTICLE V -  SECURED CLAIMS GENERALLY

The term "secured claim" as used in this Plan shall be consistent with § 506 of the Bankruptcy Code, and shall mean an allowed claim in an amount equal to the present value of the applicable creditor's interest in the Debtor' interest in the property, or in the amount subject

to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Court.

## ARTICLE VI -  ATTORNEY COMPENSATION

The Debtor' attorney, Zalkin Revell, PLLC, shall be paid for the services rendered to the Debtor herein, and services to be rendered post-confirmation, as an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Articles II and IV of this Plan. All fees and expenses requested by the Debtor' attorney are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

## ARTICLE VII -  PLAN FUNDING

### 1.    Funding of Creditors Fund.

The Debtor shall pay into the Creditors Fund all nonliened funds and assets of the Debtor. The Debtor shall fund the Creditors Fund from cash on hand that is not subject to creditor liens, from recovery of assets (less expenses of recovery) that are not subject to creditors liens, and from funds "carved out" by agreement with secured creditors.  The Debtor shall have the discretion to make such payments into the Creditors Fund on intervals as determined by the Debtor so long as the total amount of all nonliened funds and assets of the Debtor are fully paid into the Creditors Fund by the conclusion of the five year term of the Plan.  The Debtor may choose to pay all of its nonliened funds and assets into the Creditors Fund by a date earlier than the expiration of the five year term of the Plan, and thereby complete its treatment of the unsecured class at an earlier date.

### 2.    Post-confirmation Income and Expenses

Because this is a liquidating Plan The Debtor anticipates that it will have sufficient funds from all sources to make all Plan payments as contemplated herein.

## ARTICLE VIII -  PROPERTY VESTS IN DEBTOR FREE AND CLEAR

Except as provided in this Plan or the order confirming this Plan, all of the property of the estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtor as of the Effective Date free and clear of any lien, claim or interest of any creditor except as provided for by this Plan.

## ARTICLE IX -  CONFIRMATION BY CRAM DOWN

The Debtor reserves the right, in the event that impaired classes reject the Plan, to seek confirmation of the Plan if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class.

The Plan is deemed fair and equitable if it provides (i) that each holder of a Secured Claim retains its lien and receives deferred cash payments totaling at least the allowed amount of its claim, of a value, as of the effective date of the Plan, of at least the value of its secured interest in the property subject to his lien, and (ii) that each holder of an Unsecured Claim

15

receives property of a value equal to the allowed amount of its claim, or no holder of a junior claim receives or retains any property.

## ARTICLE X -  EFFECT OF CONFIRMATION OF THE PLAN

### A.    Terms Binding

Except as provided in §1141 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

### B.    Automatic Stay

The automatic stay provisions of § 362 of the Bankruptcy Code shall remain in full force and effect until the Effective Date, provided, however, that such automatic stay shall remain in force as to Disputed Claims until a Final Order has been entered in respect thereof.

### C.    Injunction

Except as otherwise expressly provided for herein, in the Confirmation Order or in a separate order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against the Debtor, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or against the property of the Debtor, (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor or against the property or interest in property of the Debtor, and (e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims which are extinguished, dismissed or released pursuant to the Plan.

Upon completion of the Plan Payments to Holders of Allowed Claims as provided for under this Plan, the Debtor shall seek the entry of an Order discharging them from any debt that arose before confirmation of the Plan pursuant to Bankruptcy Code §1141(d)(1)(A) by filing a Motion for the Entry of a Chapter 11 Discharge pursuant to Bankruptcy Code §1141(d)(5)(A) or (B) (if applicable).

### D.    Exculpation

Neither the Debtor, nor its officers, directors, shareholders, accountants or attorneys in the bankruptcy case (the "Releasees") shall have or incur any liability to any Holder of a Claim against the Debtor, or any other party-in-interest, or any of their Representatives, or any of their successors or assigns, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of the Chapter 11 Case, the pursuit of confirmation of this Plan, or the consummation of this Plan, except and solely to the extent such liability is based on fraud, gross negligence or willful misconduct.

### E. No Limitations on Effect of Confirmation

Nothing contained in the Plan will limit, waive or restrict in any way the effect of Confirmation as set forth in §1141 of the Bankruptcy Code. Confirmation will bind the Debtor, all Creditors and other parties in interest to the provisions of the Plan, whether or not the Claim of such Creditor is Impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted the Plan.

### F. Avoidance Actions

As of the Effective Date, any and all Avoidance Actions accruing to the Debtor shall be reserved.

### G. Maintenance of Administrative Expense Claim Status Post-Discharge

Notwithstanding any discharge granted to the Debtor, Allowed Administrative Expense Claims shall maintain their administrative priority status under §507(a)(1) of the Bankruptcy Code until paid in full.

### H. No limitation on Internal Revenue Service Assessment, Collection or Enforcement for Employment Taxes withheld from Employees.

Nothing in this Section or Plan shall be interpreted to enjoin or prevent the Internal Revenue Service from investigating, assessing, collecting or otherwise bringing enforcement actions against officers, shareholders, directors, agents or similarly situated individuals, to the extent that such individuals held such positions or served in such roles with the debtor pre-petition, for the purposes of collecting Trust Funds withheld from Debtor's employees' paychecks or any similar action authorized by 26 U.S.C. § 6672, related statutes, and regulations.

## ARTICLE XI - RETENTION OF JURISDICTION

### A. Jurisdiction of the Bankruptcy Court

Until the provisions of the Plan have been satisfied in full, the Court shall retain jurisdiction, to the full extent authorized by law, over the Debtor, the Debtor' property, and all holders of claims or interests provided for in the Plan for the purposes of implementing and consummating the Plan, including but not limited to the following:

(1) Allowance or disallowance of and determination of the amount priority, validity, and dischargeability of all claims;

(2) Interpreting the Plan and hearing all disputes arising in connection with implementation of the Plan;

(3) Interpreting and clarifying the description of the collateral securing any class in the Plan;

(4) Enforcing all causes of action which may exist on behalf of the Debtor; and

(5) Issuing any order, process or judgment necessary or appropriate to carry out the provision of the Plan and the provision of Title 11, United States Code.

### B. Failure of Bankruptcy Court to Exercise Jurisdiction

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising under, arising in or related to the

Bankruptcy Case, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

## ARTICLE XII -  MISCELLANEOUS PROVISIONS

### A.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the internal laws of the State of Florida shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to the conflict of laws provisions of the State of Florida.

### B.    Final Order

Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Final Order may be waived by the Debtor upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

### C.    Notice of Default

In the event that the Debtor fails to promptly make any payment or cause any delivery required by the Plan when due or otherwise fail to comply with the provisions of the Plan and such failure continues for thirty (30) days after written notice thereof shall have been delivered to the Debtor, the holder of any claim or interest defined under and treated by the provisions of the Plan may forthwith deliver in writing to the Debtor a declaration of default. Copies of any notices delivered to the Debtor shall also be delivered to the Debtor' counsel. Upon the delivery of such a declaration of default, and the expiration of an additional 30 days from said delivery, without the curing of such default by the Debtor, the filing of an affidavit contradicting the default, or the filing of a further modification of this Chapter 11 Plan proposing to cure such default, such holder:

(a)    May proceed to enforce the remedies that are afforded under the provisions of the Plan or that are provided for under the terms and conditions of any instrument executed in favor of such holder consistent with or in connection with confirmation of the Plan or in consummation of the Plan;

(b)    May seek any and all other appropriate relief from the Court; and

(c)    If the asserted default relates to any payment due to the United States of America under the Plan, the United States of America may seek enforcement of its notices of federal tax liens filed against the property of the Debtor.

### D.    Business Days

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be

completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### E.    Notices

All notices, requests, and demands to or upon the Debtor, to be effective shall be in writing with a copy by email and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or in the case of email, when sent and confirming email received back to the sender, addressed as follows:

| | |
|---|---|
| To the Reorganized Debtor | Payroll Management, Inc.<br>c/o McCullar & Company<br>2441 US Highway 98W, Suite 108<br>Santa Rosa Beach, FL 32459<br>rmccullar@mccullarcpa.com |
| With a copy to: | Zalkin Revell, PLLC<br>Attn: Natasha Z. Revell<br>2078 US Highway 98W, Suite 105A, #110<br>Santa Rosa Beach, FL 32459<br>nrevell@zalkinrevell.com; and<br>eservice@zalkinrevell.com |

### F.    Post-Effective Date Fees and Expenses

From and after the Effective Date, the Debtor shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of Professional Persons thereafter incurred by the Debtor, including without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### G.    Filing of Additional Documents

On or before substantial consummation of the Plan, the Debtor or Reorganized Debtor shall issue, execute, deliver, and file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

### H.    Time

Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day. Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

### I.    Saturday, Sunday or Legal Holiday

If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### J.        No Attorneys' Fees

No attorneys' fees will be paid by the Debtor or Reorganized Debtor with respect to any Claim or Interest except as expressly specified herein or Allowed by a Final Order of the Bankruptcy Court.

### K.        Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

### L.        Preservation of Rights of Setoff

The Debtor may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against the Holder of such Claims; but neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such Holder.

### M.        No Injunctive Relief

No Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

### N.        No Admissions

The preparation and filing of this Plan were undertaken, in part, as a means of settling disputes among various parties in interest in the Case and is offered by the Proponent, in part, as an offer in compromise by the Proponent in the Plan to other parties in interest in the Case. No statement or omission by Proponent in the Plan, including any statement concerning the estimated Allowed Amount of any Claim, shall preclude or estop the Proponent from objecting to any Claim, and no such statement or omission shall constitute, or be deemed to constitute, any type of admission, waiver or estoppel on the part of the Proponent, and nothing stated or unstated by the Proponent shall be admissible against the Proponent except in the hearings on the confirmation of the Plan.  Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

### O.        Severability

Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

### P.        Waiver

The Debtor reserve their rights, in their sole discretion, to waive any provision of the Plan to the extent such provision is for the sole benefit of the Debtor and/or their Affiliates.

### Q.        Savings Clause

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

### R.      Vesting of Assets

On the Effective Date and except as otherwise provided in the Plan, all the Property of the Estate will vest in the Reorganized Debtor free and clear of any and all Liens, Claims, and other interests of every kind and nature, including causes of action and claims for relief on account and in respect of the provisions of §§ 362, 505, 510, 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any causes of action for or claims for relief existing under state or other federal law.  Pursuant to, among other authority, § 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor, for and on behalf of the Debtor' estate, shall have the power, authority and standing to prosecute, compromise or otherwise resolve such claims, with all proceeds derived therefrom, subject to the provisions of the Plan. The Reorganized Debtor shall operate and manage the Debtor' property and make all Distributions in accordance with the terms of the Plan.

### S.      Reliance

The Reorganized Debtor, or their agents and professionals, while acting on their behalf post-Confirmation, including but not limited to, objecting to Claims, making Distributions to Creditors holding Allowed Claims, and approving settlement of Actions, as the case may be, shall be permitted to reasonably rely on any certificates, sworn statements, instruments, reports, claim dockets, schedules, or other documents reasonably believed by them to be genuine and to have been prepared or presented by the Bankruptcy Court Clerk's Office, the Debtor, and the Debtor's Professional Persons.

### T.      Withdrawal or Modification of the Plan

The Plan Proponent reserves the right to withdraw the Plan at any time before the entry of the Confirmation Order, in which event the Plan shall be deemed null and void.

The Plan Proponent may alter, amend or modify the Plan at any time before Confirmation, provided that the Plan, as altered, amended or modified, satisfies the conditions of §§1122 and 1123 of the Bankruptcy Code, and the Plan Proponent shall have complied with §1125 of the Bankruptcy Code.  However, the Bankruptcy Court may require revoting on the Plan if the Plan Proponent modifies the plan before Confirmation.

The Plan Proponent may also seek to alter, amend or modify the Plan at any time after Confirmation subject to §1125 of the Bankruptcy Code.

A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.  Prior to the Effective Date, the Plan Proponent may make appropriate technical non-material modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of Holders of Claims or Equity Interest.

The Plan Proponent further reserve the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

U.       **Headings**

Heading are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

V.       **Exhibits/Schedules**

Any exhibits and schedules to this Plan are incorporated into and are made a part of this Plan as if fully set forth herein.

W.       **Good Faith**

Confirmation of the Plan will constitute a finding that the Plan has been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code.

X.       **Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the Bankruptcy Case under §1112(b) of the Bankruptcy Code, after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under §1112(b) of the Bankruptcy Code.   If the Bankruptcy Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during this case.   In addition, any Allowed Claims for Administrative Expenses which are not paid on the Effective Date shall continue to be entitled to administrative priority, under §507(a)(1) of the Bankruptcy Code in any such subsequent Chapter 7 case to which this case is converted.

Y.       **Entire Agreement**

The Plan, as described herein, and exhibits hereto set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents.   No party hereto shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

## **CONFIRMATION REQUEST**

The Plan Proponent hereby requests confirmation of the Plan pursuant to Bankruptcy Code § 1129(a) or, in the event that the Plan is not accepted by each of those Classes of Claims entitled to vote, Bankruptcy Code § 1129(b).

January 17, 2023

PAYROLL MANAGEMENT, INC.

By:   */s/ Terry Bee*
     President


ZALKIN REVELL, PLLC

*/s/ Natasha Z. Revell*
NATASHA Z. REVELL
2078 US Highway 98W, Suite 105A, #110
Santa Rosa Beach, FL 32459
(850) 267-2111 (Tel)
nrevell@zalkinrevell.com
Counsel for the Debtor-in-Possession


ZALKIN REVELL, PLLC

*/s/ Kenneth W Revell*
KENNETH W. REVELL
ZALKIN REVELL, PLLC
2800 Old Dawson Rd., Ste. 2, #202
Albany, GA 31707
(229) 435-1611 (Tel)
(866) 560-7111 (Fax)
krevell@zalkinrevell.com
Counsel to the Debtor-in-Possession